40 C.C.P.A.(Patents)

### Application of BUCKENDALE.

### Patent Appeal No. 5961.

United States Court of Customs and Patent Appeals.

June 17, 1953.

Rehearing Denied Sept. 28, 1953.

Strauch & Hoffman by Strauch, Nolan & Diggins, Washington, D. C. (William A. Strauch and James E. Nolan, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner finally rejecting as unpatentable over the prior art, claim 17 in appellant's application for a patent for "Tubular Axle Beams." Claims 4, 7, and 19 to 22, inclusive, were allowed:

The rejected claim reads:

> "17. In a tubular axle beam of generally rectangular cross-section and substantially constant width throughout its length and comprising upper and lower channeled members joined throughout their length along parallel straight edges at opposite sides of the

beam, said beam having parallel straight side walls of substantially uniform thickness throughout the length of said beam, flat top and bottom walls at opposite end portions of said beam to provide for attachment of vehicle springs, and stoved substantially squared corners at the junctions of said side walls with said top and bottom walls, said corners being materially thicker in metal section than said walls for strengthening said end portions against torque reactions transmitted through said springs."

The prior art references are

Dehn (Br.) 289,684 May 3, 1928.

Mogford et al. 1,899,347 February 28, 1933.

Appellant describes his invention in the following language:

" * * * Each of the two substantially identical channel members is forged from a sheet metal blank of uniform thickness, the first operation being to form the blank into the rectangular channel shape, and the next operation being to stove the channel at least at its end portions, which redistributes metal from the channel walls into the squared corners that become thicker than the walls and contain densified compacted metal. During the stoving operation the channel is confined in a square cornered die assembly with its upper side edges exposed to pressure from a coacting die that pushes down on the channel side walls and forces the channel into the shape of the die. This term "stoved" was deliberately chosen to define the structure of the beam corners since it accurately recites the structure resulting from the only manner known to applicant of obtaining his special thickened compacted metal corners. During these operations the proper beam length is maintained and the longitudinal side wall edges are maintained straight, so that in mass production any two forged channel members may be welded together along those straight lines, the finished structure being a unitary hollow beam. * * * "

It is alleged by appellant that the result is "a new construction which is not disclosed in the prior art, which is lighter in weight but provides equivalent strength with attendant savings in the metal and cost of manufacturing, and which is particularly adapted to modern vehicles and manufacturing methods."

While it is clear that invention is present in the six claims allowed by the Patent Office, the dispute below, as well as here, is whether the limitations disclosed in claim 17 are already met by the prior art.

The claim was rejected by both the examiner and the Board of Appeals on the references cited above, although the board was of the opinion that it could properly have been rejected on the Dehn patent alone.

The issue before us is whether the Patent Office erred, as contended by appellant, in rejecting the involved claim on the references cited.

The patent to Mogford et al., relates to a tubular axle which is first fashioned as a straight axle beam and subsequently converted into a bowed shape.

The patent to Dehn likewise relates to tubular axles and discloses a bowed beam of generally rectangular cross-section with thickened corners. The beam is made with similar channels joined on the opposite sides. All of such construction reads on the involved claim.

The examiner properly held that Dehn, in view of Mogford et al., clearly met the straight axle feature of appellant's structure.

Appellant contends that the feature of side walls of substantially uniform thickness discloses a patentable feature over Dehn. The examiner was of the opinion that such feature was merely a change of shape or form which produced no new or unobvious result and that no invention was there present. Indeed, from our interpretation of the drawings in the Dehn patent, the walls of appellant's device are clearly disclosed by that reference.

Another feature stressed by appellant is the "stoved" and thickened corners of his axle. The examiner held that such a feature would not patentably distinguish from the corners of the Dehn structure, and that the limitation expressed in the claim that appellant's corners are "stoved" was too broad to distinguish over the corners of Dehn.

The board stated in that connection it was not "impressed with the limitation in the claim that the thickened square corners are obtained by a stoving action." The purpose of the thickened corners, as set out in the specification, is to provide for spring seats "of adequate characteristics." It seems to us, as it did to the board, that since the Dehn device also has similar thickened corners that such corners have the same characteristics and are designed for the same function as the corners of appellant's axle. Even if the corners of the Dehn structure are made by a method different from the corners of appellant, it does not appear that appellant has obtained a new or unobvious result.

Appellant further contends that his invention is particularly concerned with the production of channels made from sheet metal. Not only does the claim fail to mention the use of a particular metal but, as we read the Dehn patent, the same kind of metal can be employed in the production of that axle.

Finally, appellant urges that the Dehn axle has solid ends as distinguished from the alleged "open-end" feature of his axle. We believe, as held by the examiner, that the instant claim contains no limitation which would differentiate over that feature of Dehn. The language in the claim that the side walls are of "substantially uniform thickness throughout the length of said beam" is, in our opinion, too broad to distinguish over that feature of Dehn.

Since we believe the references used by the Patent Office were proper and that no patentable distinction is present between the claim and references, the decision of the board is affirmed.

Affirmed.